UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PHILLIP SHARPE,

                              Plaintiff,

      v.                                              04-cv-0220

GLENN GOORD, L. WRIGHT, ISRAEL RIVERA,
DEP. ADLER, B. WARD, DOCTOR SPITZER,
NA GRIFITH, R.N. FLANAGAN, R.N. HOEBEKE,
MR. TRIPP AND MR. MARTIN,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Plaintiff commenced the instant action pursuant to 42 U.S.C. § 1983 claiming that, while incarcerated, he was subjected to cruel and unusual punishment in violation of his Eighth Amendment rights, denied participation in a drug rehabilitation program, and retaliated against for engaging in protected activity. Presently before the Court is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal of the Complaint in its entirety.

I.      **FACTS**

The following facts are taken from Defendants' properly supported Statement of Material Facts submitted pursuant to N.D.N.Y.L.R. 7.1(a)(3). Because Plaintiff failed to submit a responsive Statement of Material Facts as required by Rule 7.1(a)(3) and Defendants informed Plaintiff of the consequences of failing to properly respond to a motion

for summary judgment, the facts set forth in Defendants' Statement of Material Facts is deemed to be true. N.D.N.Y.L.R. 7.1(a)(3).

### a.  **The ASAT Program**

At all times relevant hereto, Plaintiff was an inmate in the custody of the New York State Department of Correctional Services ("DOCS") and housed at the Washington Correctional Facility. Plaintiff was incarcerated following a conviction for driving while intoxicated. While in prison, Plaintiff had the opportunity to participate in DOCS's Alcohol and Substance Abuse Treatment program ("ASAT"). The ASAT program is six months long and uses education, individual and group counseling, relapse and transition counseling, and self-help programs to help inmates understand the process of addiction and the dynamics of recovery. Upon entering the ASAT program, inmates are advised that their failure to comply with the program's rules and regulations may result in their termination from further participation.

Plaintiff was admitted into the ASAT program on December 7, 2001. During the time that Plaintiff was in the ASAT program, he was charged with smuggling a narcotic medication. Prison officials determined that smuggling narcotics was inconsistent with satisfactory participation in the ASAT program. Accordingly, on June 4, 2002, days before his completion of the program, Plaintiff was removed from the ASAT program. Plaintiff ultimately was found guilty of the smuggling charge.

### b.  **Work Restrictions**

Programming assignments for inmates are made by the Program Committee. Such assignments generally try to reflect an inmate's abilities, educational/vocational needs, and the type of work available at the facility. Defendant Ward was the Chairman of the Program

Committee. Defendant Adler was the Deputy Superintendent for Programs. If an inmate's medical condition rendered him unable to do a certain type of work, the medical staff would issue a medical restriction for a period of time. When such a restriction is issued, a copy of the restriction form is to be provided by the facility medical staff to various individuals or units, including the Guidance Office that supervises program assignments.

Plaintiff contends that he injured himself on November 6, 2001 while carrying boxes. Sharpe Dep. at 32. This injury was reported to the medical staff on November 9, 2001. As a result, as of November 9, Plaintiff was placed on a medical restriction barring him from lifting heavy items. By its own terms, this restriction expired as of November 30, 2001. On May 17, 2002, Plaintiff was again placed on a medical restriction.

On June 27, 2002, Plaintiff sought medical attention complaining of pain as a result of being required to do work that he was restricted from doing. Ward checked his computer records and found that Plaintiff was not listed as having any restrictions. Ward then contacted the medical staff who advised Ward that a medical restriction had been issued on May 17, 2002. Ward checked his files to look for a copy of the May 17, 2002 restriction. Ward had no copy. Upon learning of the restriction from the medical staff on June 27, Ward immediately changed Plaintiff's work assignment.

### c.     Misbehavior Reports

Certain types of medications may only be administered to inmates in the infirmary. Inmates who are prescribed such medications must physically go to the infirmary, be given the prescribed dosage of the medication, and take the medication in the presence of facility staff. This procedure permits medical staff to verify that the inmates took the medication rather than secreting it. The purpose of this procedure is to ensure that inmates take their

medication and to prevent any unauthorized practices (such as the unlawful sales of controlled substances).

In February 2002, Plaintiff was taking controlled substances subject to the above-described procedure. On February 24, 2002, Defendant Flanagan gave three pills to Plaintiff. During the course of administering the pills, Plaintiff showed Flanagan two pills on his tongue. Plaintiff insisted that he accidentally threw the third pill away. Flanagan searched the area for the claimed missing pill. Believing that Plaintiff secreted the third pill, Flanagan issued a misbehavior report to Plaintiff for failing to obey an order, making false statements, and interfering with an employee. Plaintiff was found guilty of making a false statement and interfering with an employee. He was found not guilty of the charge of failing to obey an order. The charges of making a false statement and interfering with an employee were affirmed upon administrative appeal.

In May 2002, Plaintiff was receiving Oxycontin, a narcotic medication subject to the above-described procedures. On May 20, 2002, Plaintiff was given a medication cup containing the prescribed three Oxycontin pills. Defendant Nurse Hoebeke directed Plaintiff to swallow the pills. Upon inspection of Plaintiff's mouth, Hoebeke could see that Plaintiff had tucked the pills under his lip and had not swallowed them. As a result, Hoebeke issued an inmate misbehavior report charging Plaintiff with failing to obey an order and smuggling. Plaintiff was found guilty on both charges, which were affirmed upon administrative appeal.

On November 17, 2002, Flanagan issued another misbehavior report to Plaintiff for threatening or harassing employees. According to the misbehavior report, Plaintiff stated to Flanagan in a strong, angry, and threatening voice that "I just want you to know that you are

all being served by U.S. Marshalls soon." Plaintiff was found guilty on the charges of harassment and making threats. These charges were affirmed upon administrative appeal.

## II.     STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedures governs motions for summary judgment. It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. V. Bidemann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

## III.     DISCUSSION

### a.     Removal from the ASAT Program

In his Complaint, Plaintiff contends that he was improperly removed from the ASAT program.  This Court has previously noted that "there is no constitutional right to treatment for drug addiction nor is there a right for an inmate to choose a drug treatment program he or she desires."  Toney v. Goord, 2006 WL 2496859, at *8 (N.D.N.Y. 2006).  Plaintiff fails to identify any facts, statutes, or regulations that might give him a constitutionally protected right to participate in a drug treatment program.  Accordingly, removing Plaintiff from the ASAT program did not implicate any claims under 42 U.S.C. § 1983 and this claim must be dismissed.

### b.     Eighth Amendment Claims

To succeed on his Eighth Amendment claim, Plaintiff must proffer evidence from which a fair-minded trier of fact reasonably could conclude that Defendants acted with deliberate indifference towards his serious medical needs.  Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003).  This test encompasses an objective and subjective element. Whether a medical condition is sufficiently serious is an objective test.  Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003).  Whether Defendants acted with deliberate indifference to such a need is governed by a subjective test.  Id.  Deliberate indifference generally describes a mental state more blameworthy than negligence.  See Chance v. Armstrong, 143 F.3d 698 (2d Cir. 1998).  There must be evidence that Defendants "actually wished [Plaintiff] harm, or at least, [were] totally unconcerned with [his] welfare."  Hathaway, 37 F .3d at 69.  There must be evidence of a "complete denial of or intentional effort to delay access to medical care, or a reckless and callous indifference to the safety of prisoners."  Hogan v. Russ, 890

F. Supp. 146, 149 (N.D.N.Y. 1995). The subjective standard for a claim of deliberate indifference to a serious medical need requires a high level of culpability. This mental state is similar to that of recklessness in criminal law. The actor must be "aware of a substantial risk of harm." Salahuddin v. Goord, 467 F.3d 263, 280 (2006). The belief that a certain course of conduct poses no substantial risk of harm "need not be sound so long as it is sincere." Id. at 281.

Here, Plaintiff claims that he was injured because he was required to lift heavy boxes notwithstanding a medical restriction on heavy lifting. With respect to Plaintiff's November 6, 2001 injury, there is no evidence in the record that Defendants were aware of any serious medical issues at that time preventing Plaintiff from lifting heavy objects or that they deliberately disregarded any such serious medical issues. As of November 6, Plaintiff did not have any medical restrictions. Rather, the medical restriction was issued on November 9, three days after Plaintiff's injury. Accordingly, this claim must be dismissed.

Plaintiff also claims that he was forced to do heavy lifting in June 2002 while under a medical restriction. Defendants admit that a medical restriction was in place at that time. Defendants argue, however, that neither Ward nor Adler (the Defendants named in this claim) acted with deliberate indifference to a serious medical need because they were not aware of the medical restriction.

The undisputed evidence in the record demonstrates that, although the medical unit had issued a restriction for Plaintiff, that restriction was never provided to the Guidance Office. Accordingly, neither Ward nor Adler were aware of it. There is no other evidence in the record suggesting that Ward or Adler knew, or had reason to know, of any medical restrictions in place as of June 2002. By its own terms, the November 2001 restriction

expired as of November 30, 2001. Absent knowledge of Plaintiff's condition at the time, it cannot be said that Ward or Adler acted with deliberate indifference to a serious medical need. This conclusion that Ward did not act with deliberate indifference is supported by the undisputed evidence that, once Ward learned of the medical restriction, he immediately changed Plaintiff's program. Accordingly, this claim also must be dismissed.

### c. Retaliation

To state a prima facie case of retaliation under § 1983, a plaintiff must demonstrate that: (1) his speech was constitutionally protected; (2) he suffered an adverse action; and (3) a causal connection exists between the speech and the adverse action so that it can be said that the speech was a motivating factor in the determination. Washington v. County of Rockland, 373 F.3d 310, 320 (2d Cir. 2004). "If a plaintiff establishes these three elements, a defendant may avoid liability by showing 'by a preponderance of the evidence that it would have reached the same decision as to [the employment action] even in the absence of the protected conduct.'" Diesel v. Town of Lewisboro, 232 F.3d 92, 107 (2d Cir. 2000) (quoting Mount Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283-87, 97 S. Ct. 568, (1977)).

Here, Plaintiff contends that misbehavior reports were issued against him in retaliation for commencing litigation or serving a notice of an intent to file a lawsuit. With respect to Defendant Tripp, there is no evidence in the record that he ever issued a misbehavior report to Plaintiff. Absent any indicia of adverse action taken by Tripp against Plaintiff, any claim against Tripp must be dismissed.

With respect to Defendant Griffith, she issued misbehavior reports in October 2002 and June 2003. This was long after Plaintiff sent notice of his intent to sue in November

2001 and January 2002 and actually filed suit in February 2003.  This long period of time between the notices of the intent to sue and the issuance of the misbehavior and the lack of any other evidence indicating retaliatory intent is insufficient to warrant an inference that the misbehavior reports were filed in retaliation for the notice of intent to sue.  See Gorman-Bakos v. Cornell Co-op Extension of Schenectady County, 252 F.3d 545, 554-555 (2d Cir. 2001).  Accordingly, Plaintiff fails to demonstrate a causal connection between the misbehavior reports filed by Griffith and his protected speech.

      The Court will now turn to the retaliation claims against Defendants Flanagan and Hoebeke.  Assuming, *arguendo*, Plaintiff can set forth the elements of a retaliation claim, Defendants have demonstrated their entitlement to summary judgment on the Mount Healthy defense.  The misbehavior reports issued by these two Defendants were supported by specific facts.  Moreover, Plaintiff was found guilty of misconduct on the charges.  Those findings were affirmed upon administrative appeal.  Further, both Hoebeke and Flanagan have stated, without contradiction or contrary suggestion, that they had no other motive in filing the report other than their belief that Plaintiff was guilty of the conduct alleged in the misbehavior reports.[1]  Absent any evidence tending to suggest that Defendants acted with a retaliatory animus when filing the misbehavior reports, Defendants have demonstrated that they would have filed the misbehavior reports regardless of Plaintiff's having filed a lawsuit or sent a notice of intent to commence a lawsuit.  Accordingly, Plaintiff's retaliation claims must be dismissed.

---

[1] The Court acknowledges that it is quite rare for a defendant to admit that he or she acted with retaliatory animus.  Nevertheless, in this case, the Court is presented with Defendants' statements setting forth the purported reasons why they filed the misbehavior reports, the findings of guilt on the charges, and a lack of any evidence from which it reasonably may be inferred that a motivating factor in the filing of the misbehavior reports was Plaintiff's having filed a lawsuit.

### d.  Other Claims

It is unclear what, if any, other claims Plaintiff may be raising in his Amended Complaint. The Court has reviewed Plaintiff's Complaint and finds that Plaintiff has failed to proffer sufficient facts upon which a fair-minded trier of fact could reasonably conclude that any of the named Defendants violated his constitutional rights.

### IV.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and the Complaint is DISMISSED IN ITS ENTIRETY.

IT IS SO ORDERED.

Dated: September 5, 2007

_Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge